Mario Pittoni, J.
 

 The plaintiffs and intervening plaintiffs demand judgment declaring the town’s zoning ordinance which affects their property to be invalid, void and unconstitutional on the grounds that it violates the due process and the impairment of contract clauses of the Constitutions.
 

 The ordinance under attack changed the zone classification of the subject property from “ C ” and “ D ” Residence to “ H ” Light Industry; and, in doing so, barred the use of the subject property for residential and for heavy industry purposes.
 

 I.
 

 It appears that some time in 1929 the town zoned the subject property (located in School District No. 17, otherwise known as Hicksville School District) as Residence “ C ” and “ D ”. These classifications permitted and do permit one-family houses upon plots of 10,000 and 7,000 square feet respectively.
 

 Some time thereafter, Press Wireless, Inc., purchased the property and continued in ownership until it conveyed to the plaintiffs on December 10,1957.
 

 
 *804
 
 In the meantime, in 1953, the town adopted a comprehensive plan and zoning ordinance and retained the subject property in “ C ” and “ D ” Residence classifications.
 

 On April 30, 1957 Press Wireless, Inc., contracted to sell the subject property, then 185 acres, to the plaintiffs; and on December 10, 1957 conveyed to them for a total sale price of $2,721,762.33. Of this, $700,000 was paid in cash and the rest, or $2,021,762.33, was by a purchase-money mortgage to Press Wireless, Inc., and the First National City Trust Company. Principal payments over and above interest were to be $53,013.40 starting June 10, 1959 and payable every three months until December, 1962. It was shown at the trial that the property is the only asset of plaintiff Opgal, Inc., the mortgagor, that plaintiff Haas is not personally liable on the mortgage and that because of this the plaintiffs have been unable to pay the interest and amortization on the mortgage. At the time of the trial the face amount of the mortgage was $1,321,848.54.
 

 In the meantime, the plaintiffs have sold 45 acres of the subject property to Louis Bower for $792,085.50 and that portion has been developed with residential homes. Also, in the meantime, the plaintiffs sold half of its frontage on John Street, or a total of 13 acres of its southeast corner, to Nassau County for $201,190 to be used as a county storm drainage sump.
 

 Soon after the contract of sale the plaintiffs began engineering, surveying and other planning work in preparation for the building of residences on the property. Therefore, exclusive of taxes and mortgage interest payments, they have paid or have become obligated to pay approximately $90,000.
 

 In the meantime too, the Hicksville School Board began to take an active part to prevent the property from being developed for residential purposes. The president of the School Board, called to testify at the trial by the town, said that late in 1957 the School Board petitioned the town to rezone the property as industrial; and also, that at another time it asked to have part of the property taken for a public park. As president of the School Board he also appeared before the Nassau County Planning Commission to object to the filing of the plaintiffs’ land map for the proposed residential developments. His motivation and that of the School Board, as he explained, was that if the property remained residential it would put a larger load on the school system, whereas if it were zoned industrial the property
 
 “
 
 would provide taxes without additional children
 

 
 *805
 
 The purchase of the property by the plaintiffs, the proposed building of residences, and the demands of the School Board may have motivated the town in using the Hicksville School District area as the spearhead for the town’s adoption of the 1958-1959 comprehensive plan; or these factors may have been merely coincidental. Be that as it may, the area in which the property is located was the first processed in a series of such hearings and new zoning classifications for various areas within the town. The first public hearing under the prospective comprehensive plan was held by the town on June 10, 1958 on the proposed rezoning of the Hicksville area; and on June 30, 1958 the Town Board passed an ordinance rezoning the property from “ C ” and
 
 “
 
 D ” Residence to “H” Light Industry. Other hearings and other adoptions in respect to other areas took place in succeeding months. The final rezoning ordinance was passed on March 31, 1959.
 

 The subject property now consists of approximately 119 acres. It is bounded on the north by residential property and by the Northern State Parkway. At the northeast end there is a small area occupied by the Hicksville Water District. North of the Northern State Parkway is vacant land zoned Residence “ C ”. However, to the northwest of the property and also north of the Northern State Parkway is another “ H ” Industrial area.
 

 On the east and on the north side of John Street the subject property is bounded by a “ C ” and “D” residential district built up with homes and no industrial property. The only industrially zoned property to the east of the subject property is situated, not on the southern side of John Street, but to the south of John Street, along the railroad.
 

 About one half of its southerly side, that is, the easterly half thereof, is bound by the county-owned water drainage sump property. Its southwesterly side is bound by a jagged area now zoned “ II ” and on which there are some light industry buildings. Farther south is John Street, and south of John Street is an area zoned in part county property and in part commercial. Still further south the area is zoned residential, and looking further south the area is zoned Residential “ E ”.
 

 To the west of the subject property is first a narrow street, Cantaigue Rock Road, further west is a “ C ” and
 
 “
 
 D ” residence area partly built up and partly undeveloped, then the Town of North Hempstead and then the Wantagh State Parkway. Still farther in a southwesterly direction is some industrial property.
 

 
 *806
 
 At the present time the only ingress or egress to the subject property is Cantaigue Rock Road which bounds only part of the subject property on its west side, and an undeveloped road under the Northern State Parkway.
 

 A study of the maps in evidence shows that the subject property, as presently zoned, stands out as a conspicuous encroachment on a residential area. This is the property which was rezoned from “ C ” and “ D ” Residential to “ H ” Light Industry because the town’s planning expert was interested in developing a comprehensive plan with an over-all pattern, and was not interested in a particular parcel; and who said that boundary lines are only considered to help the pattern.
 

 n.
 

 It is -fundamental that the burden of proof to establish that an ordinance is invalid is upon the assailant. If the zoning classification be fairly debatable the judgment of the legislative body, the Town Board in this case, is conclusive
 
 (Rodgers
 
 v.
 
 Village of Tarrytown,
 
 302 N. Y. 115;
 
 Shepard
 
 v.
 
 Village of Skaneateles,
 
 300 N. Y. 115); and this presumption of constitutionality must be disproved beyond a reasonable doubt
 
 (Wiggins
 
 v.
 
 Town of Somers,
 
 4 N Y 2d 215, 218). Furthermore,
 
 “
 
 A possible depreciation in value ” of property does not invalidate the ordinance
 
 (Shepard
 
 v.
 
 Village of Skaneateles,
 
 300 N. Y. 115, 120,
 
 supra).
 
 It must now be determined whether this burden has been sustained by the assailants in this case.
 

 Just prior to the June, 1958 Town Board hearing and the rezoning of the subject property there were in the town approximately 1,300 acres of industrially zoned land in use and 800 acres of undeveloped industrially zoned land. There were also approximately 5,800 acres of vacant land zoned for industrial use in Nassau and Suffolk Counties. This shows no present need for further industrial rezoning. It may be that the town’s zoning and planning consultant and the Town Board intended to set up an
 
 “
 
 industrial bank ” for future industrialization of some town areas. Laudable as this objective may be, it cannot be accomplished at the complete or substantial expense of constitutionally protected property of others.
 

 It may be that the Town Board heeded the request of the local School Board to zone this area industrial so as to prevent an increase of school population and at the same time increase the tax income to the School District. Again, laudable as this objective may be, it cannot be accomplished by immunizing the constitutionally protected property of others against any reason
 
 *807
 
 able use in the foreseeable future or at the complete or substantial expense of others. The case of
 
 Rodgers
 
 v.
 
 Village of Tarrytown
 
 (302 N. Y. 115, 122, supra) does not hold to the contrary ; it merely says that lightening
 
 ‘ ‘
 
 the tax load of the small home owner ” is one of the many elements to be considered in a zoning plan. It does not say that it alone is a valid and sufficient reason to deprive another of reasonable or profitable use of his property.
 

 On the issues of the present useability of the property for industrial purposes and the present value, the plaintiffs produced as witnesses John E. White, a real estate economist and appraiser, Meyers E. Baker, a real estate expert, and Herbert I. Silverson, a real estate consultant and former vice-president of Webb & Knapp, in charge of industrial properties. Mr. White showed that the property cannot presently be developed industrially, cannot be used for large industries and that it would take an indeterminate numbers of years to absorb the property for small manufacturing. Mr. Baker said that the property was unuseable within any reasonable amount of time for industrial purposes, that it could only be taken up industrially at the rate of less than seven acres a year and that £ £ it would take over twenty years to be able to absorb 120 acres of this industrially zoned land ’ ’. He also said that the property as presently zoned was valued at approximately $6,000 to $7,000 per acre. Mr. Silverson said that the property could never successfully be developed industrially, at a profit or otherwise.
 

 Against this was the testimony of the town’s real estate expert, Gabriel De Costard, a broker and appraiser, who testified that the property residentially zoned was worth between $18,000 and $18,500 per acre, and industrially zoned at $20,000 per acre. However, he also said that up to 75%, or 80 acres of the present total 119 acres, of the property ££ can be sold for industrial purposes ” within three to four years.
 

 The testimony of these four real estate experts in respect to possible industrialization of the property was given without considering article X-££ II ” of the Zoning Ordinance. Although that section permits commercial uses, it prohibits residential and heavy industrial use. The section itself is extremely restrictive. Section ££H-I” permits 9 or 10 groups of uses as a matter of right. These range from business through streetcar barns and streetcar repair shops and other light industries. Section ££ H-IA ” lists over 25 groups of uses ££ permitted only as a special exception by the Town Board, after a public hearing”. Section ££H-IB” is an outright prohibition of 48
 
 *808
 
 groups of uses. Section “ H ” also includes restrictions as to parking areas, loading space, lot size for buildings and a 50-foot maximum for buildings.
 

 On the basis of the testimony of the four experts, their backgrounds within their fields, their reasons and their conclusions, all viewed in the light of the circumstances of the case and of section “H” (but without considering the deed restrictions urged upon the court by the plaintiffs), the conclusion is inescapable : the court is convinced that the property as presently zoned is worth no more than $7,000 per acre, and that it cannot reasonably be developed industrially at a profit or otherwise for an unforeseeable and unreasonable period in the future.
 

 /However compelling the future industrialization of the town may be considered by the Town Board, the solution does not lie in placing an undue and uncompensated burden on the individual owner of a parcel of land in the guise of regulation, even for a public purpose. While the Town Board has the unquestioned right to enact zoning ordinances respecting the use of property in accordance with a well-considered and comprehensive purpose to protect health, safety and general welfare, such power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably; and this is so whenever the zoning ordinance precludes the use of the property for any purpose for which it is reasonably adapted.)
 

 On this record the plaintiffs "have met their burden of proof by establishing that the property has no reasonable possibilities for industrial uses and that the ordinance precludes the use for which it is adapted. Under such circumstances, the ordinance and zoning map as they pertain to the plaintiffs’ property are so unreasonable and arbitrary as to constitute an invasion of property rights contrary to the constitutional due process clauses and as such are invalid, illegal and void.
 
 (Vernon Park Realty v. City of Mount Vernon,
 
 307 N. Y. 493, 498;
 
 Arverne Bay Constr. Co.
 
 v.
 
 Thatcher,
 
 278 N. Y. 222, 230, 232;
 
 Corthouts
 
 v.
 
 Town of Newington,
 
 140 Conn. 284;
 
 Comer
 
 v.
 
 City of Dearborn,
 
 342 Mich. 471.)
 

 In the
 
 Arverne Bay Constr. Co.
 
 case, at page 232 the New York Court of Appeals said: ‘1 We have already pointed out that in the case which we are reviewing, the plaintiff’s land cannot at present or in the immediate future be profitably or reasonably used without violation of the restriction. An ordinance which
 
 permanently
 
 so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the
 
 *809
 
 property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden. ’ ’
 

 In the
 
 Corthouts
 
 case the Connecticut Supreme Court of Errors, at pages 287-289 said: ‘ ‘ The plaintiff’s land is adapted to development for residential use, for which there is a demand. Such use is the highest and best to which it can be put. Unless it can be devoted to residential purposes, in all probability it will remain unused for many years. It is not adapted to industrial use, for which there is not any present demand in Newington and none is expected. Although the amendment prohibits the use of land in an industrial district No. 2 for residential purposes, the ordinance allows such land to be used for community buildings, hotels, clubhouses, hospitals, churches, schools, playgrounds and businesses generally. * * * The amendment proscribes what has usually been considered as the highest use to which land can be put, namely, residential use, in an industrial district where uses regarded as among the lowest and most burdensome are permitted. This is a marked departure from what has heretofore been accepted as standard practice. * * * Zoning regulations constitute a valid exercise of the police power only when they have a ‘ rational relation to the public health, safety, welfare, and prosperity of the community ’ and are
 
 ‘
 
 not such an unreasonable exercise of [the police] power as to become arbitrary, destructive or confiscatory. ’
 
 State
 
 v.
 
 Hillman,
 
 110 Conn. 92, 100, 105, 147 A. 294. Whether a zoning ordinance meets this test must be determined in the light oí existing conditions, in order that the purpose for which the police power is invoked may be promoted.
 
 Euclid
 
 v.
 
 Ambler Realty Co.,
 
 272 U. S. 365, 387, 47 S. Ct. 114, 71 L. Ed. 303. * * * We are not called upon to decide in this case whether, as a general proposition, a zoning ordinance which prohibits a residential use in an industrial district is valid. It is easy to conceive a situation where the erection and occupation of dwelling houses on land in an industrial area in close proximity to manufactories using highly inflammable or explosive materials or giving off noxious odors or pernicious gases would have a direct relation to the public health, safety and welfare and justify prohibitory legislation against the use of such land for residential purposes. But the combination of circumstances in the case at bar does not even simulate such a situation. * * * The facts disclose that the plaintiff’s land is adaptable to, and in demand for, residential purposes. The amendment prevents
 
 *810
 
 such use and commits it to industrial purposes. The land is not needed now — nor will it be needed in the near future — for industrial development. This is not a case where an owner of land is seeking to have the commission rezone the portion of it which is located within an industrial district. The plaintiff is simply insisting that he be permitted to devote his land to residential use until such time as need of it for industrial purposes arises. Since the amendment, in effect, prevents the plaintiff from using his land for any feasible purpose, it is unreasonable and confiscatory.”
 

 The intervening plaintiffs’ contention that the ordinance rezoning the property to industrial was an unconstitutional impairment of their mortgage contract cannot be sustained. The ordinance did not act on the contract itself, did not affect the terms of the contract, did not impair the obligation of performance and did not impair the remedies thereunder or the means of enforcing it. The ordinance merely acts on the property which is the subject of the mortgage. Therefore, it does not come within the provisions of the constitutional protection against impairment of contracts
 
 (Curtis
 
 v.
 
 Whitney,
 
 13 Wall. [80 U. S.] 68;
 
 Sanderson
 
 v.
 
 Salmon Riv. Canal Co.,
 
 45 Idaho 244;
 
 State
 
 v.
 
 Pullman Co.,
 
 75 Kan. 664;
 
 Germantown Trust Co.
 
 v.
 
 Powell,
 
 265 Pa. 71; 16A C. J. S., Constitutional Law, § 353, p. 24). The case of
 
 Worthen Co.
 
 v.
 
 Kavanagh
 
 (295 U. S. 56) relied upon by the intervening plaintiffs involved the impairment of the terms of the contract itself, the remedies thereunder and the means of enforcing the contract.
 

 Therefore, in summary, the plaintiffs have established the allegations of their fifth cause of action which starts at the end of the third line of paragraph 22nd with the word 1 ‘ tha,t ’ ’, and continues on to the end of that paragraph. The prior statement in paragraph 22nd in respect to the June, 1958 hearing is not relevant in this case. The plaintiffs have also established the allegations of their sixth cause of action. Therefore, they are entitled to the relief demanded in their fifth and sixth causes of action as stated above.
 

 However, they have failed to establish to the court’s satisfaction their allegations in their 1st, 2nd, 3rd, 4th and 7th causes of action. They are dismissed.
 

 The intervening plaintiffs have established to the court’s satisfaction their first cause of action and are entitled to the relief demanded therein. However, for reasons above stated, they have failed to establish their second cause of action and it is dismissed.
 

 
 *811
 
 This is the decision of the court pursuant to section 440 of the Civil Practice Act.
 

 Settle judgment on notice.