Daniel G. Albert, J.
This is an action for a declaratory judgment which was tried before Special Term, of this court, seeking in substance to declare that the Building Zone Ordinance of the Town of Hempstead adopted January 20, 1930, and as amended from time to time, is arbitrary, capricious, unreasonable, discriminatory, confiscatory, void and ineffective insofar as it restricts the plaintiff’s property to the use permitted in an Industrial (Y) District; that the aforesaid Building Zone Ordinance of the Town of Hempstead is similarly arbitrary, capricious, unreasonable, discriminatory, confiscatory, void and ineffective insofar as it prevents the use and the development of plaintiff’s property for residential purposes; and that any restrictions placed on plaintiff’s property by the defendants more restrictive than single-family residences on plots of not more than 6,000 square feet in area, would similarly be arbitrary, capricious, unreasonable, discriminatory, confiscatory, void and ineffective.
Plaintiff argues and offered testimony upon the trial of the action to prove that since the adoption of the Zoning Ordinance the conditions of the neighborhood surrounding plaintiff’s property have been so changed as to render the plaintiff’s property wholly unfit for even those industrial uses permitted in an Industrial (Y) District; that plaintiff’s property is completely surrounded on three sides by inlets and other waterways; that on the north it is adjacent to boat yards, marinas and junk yards and on the northeast is adjacent to a high-density residential area, and is bounded by lands owned and maintained as a park and parkway by the Long Island State Park Commission; and *439 that on the south side it is hounded by navigable waters; that there is no access to plaintiff’s property for use and for industrial development, with the exception of one narrow, winding street known as South Main Street, in the Village of Freeport; that plaintiff’s property is not in any way adapted or situated for industrial purposes as required by the terms of the Building Zone Ordinance which is under attack here; that the location and surrounding conditions of plaintiff’s property are not in any way conducive to the use thereof or any part thereof for industrial purposes of any character whatsoever; that the said premises of the plaintiff cannot be reasonably or profitably used or adapted for the industrial purposes for which it is zoned; and that the only reasonable purposes for which said property is situated and adapted or could be used are residential uses.
Plaintiff accordingly argues that since the ordinance unreasonably restricts the plaintiff’s property to industrial uses for which it is not reasonably or profitably adapted, it constitutes an invasion of plaintiff’s property rights and hence is in violation of the Constitutions of both the State of New York and the United States.
The testimony establishes that the plaintiff purchased the property, approximately 175 acres in size, in early 1956 at a cost of $406,021.25, or approximately $2,500 to $3,000 per acre; that there was originally a mortgage on the property but that the mortgage has since been paid in full and the property is now free and clear of incumbrances; that thereafter in 1957 or 1958 slightly more than six acres in the northwestern part of the property were sold for use as a marina and boat yard and it is conceded, that town, county and school taxes on the property, amounting roughly to approximately $16,000 annually, have been paid since the date of acquisition.
The testimony further shows that the property in question, popularly known as Cow Meadow, is situated at the foot of South Main Street in the Village of Freeport in Nassau County and that, although situated in the Town of Hempstead and completely surrounded by the territory constituting the Village of Freeport, nevertheless no part of the plaintiff’s property is actually located in the Village of Freeport, but is south of and adjacent to it. The tract is bounded on the east by Denton’s Pond Creek and Freeport Creek, on the south by what is indicated on the maps offered in evidence as the “ Narrows ”, on the west by Hudson Bay, and on the north by a marina development and junk yard.
*440 The Cow Meadow property consists of undeveloped tidal marsh land, traversed by Emory’s Creek and several other tidal creeks oriented generally in a northwest-southeast direction, and by numerous mosquito control ditches oriented east-west. With the exception of a 22-acre area at the northeast corner upon which sand fill had been stockpiled, the property is completely covered by short marsh grass on surface elevations ranging between about 2 feet and 3.3 feet above the Nassau County Datum (mean sea level, Sandy Hook), and tidal flooding frequently occurs during Spring tides and .storm tides.
At the conclusion of the trial counsel for all the litigants requested that the court visit the property in question, and the court has done so.
The testimony shows and the court has noted that the only means of street access to the Cow Meadow tract is provided by South Main Street, which is maintained by the Village of Freeport, from the property line north to Atlantic Avenue. South Main Street is a 40-foot wide local street with light-duty pavement on a 60-foot right of way in the 2,000-foot long section between the property and East Bedell Street. From East Bedell Street north approximately 1,500 feet to Atlantic Avenue, the pavement varies in width from 20 to 30 feet.
The closest railroad passenger and freight facility is at Free-port Station of the Long Island Railroad, about 1.6 miles north of the property at the intersection of Railroad Avenue and Nassau Road.
Water transportation by small harbor craft, shallow-draft barge, and private boat is feasible if the necessary depths adjacent to the property are provided by dredging to the depth of the channels in Freeport Creek, Hudson Bay and the Narrows.
There are no storm sewers, sanitary sewers, water, power and gas lines on the Cow Meadow property.
Under the Building Zone Ordinance of the Town of Hemp-stead, adopted in January, 1930, along with a zoning map which divided the town into various Use Districts, the Cow Meadow property is situated within an Industrial (Y) District. Land use within the property, as defined by the terms of article 8 of the ordinance, is restricted to all industries, other than specifically prohibited industries, which meet the performance requirements of the Board of Appeals, and to commercial establishments permitted under the terms of article 7, “Business Districts ”. Prohibitive uses include residential development in any form, specific industries which are potential health or fire hazards, specific “nuisance” industries, and any other use which may *441 bo deemed by the Board of Appeals to be noxious or offensive by reason of the emission of odor, dust, fumes, smoke, gas, vibrations or noise.
High-density residential development brackets South Main Street adjacent to the marina and junk yard at the northerly perimeter of the Cow Meadow property. Across Hudson Bay to the west, the entire land area between South Grove Street and Hudson Avenue north of the proposed Town Park property, is completely occupied by single-family residences on 5,000- to 6,000-square foot lots. The Meadowbrook State Parkway and tidal marsh land owned and maintained by the Long Island State Park Commission are located east of the Cow Meadow property across Freeport Creek. The undeveloped tidal marsh lands to the south are owned by the Town of Hempstead and Long Island State Park Commission. Comparative aerial photographs m evidence clearly show that the pattern of development adjacent to the Cow Meadow property is predominantly residential, on reclaimed tidal marsh land.
The ground water level at the site is tidal, and water levels are at or slightly below the surface of the ground. The evidence indicates an estimation that grading the Cow Meadow tract to an average elevation of eight and one-half feet above the Nassau County Datum would require about 1,500,000 cubic yards of hydraulic-placed fill. At an average cost of 75 cents per cubic yard of hydraulic fill in place, which includes the fee of 35 cents per cubic yard levied by the Town of Hempstead for fill secured from town lands under water, the basic cost of grading the Cow Meadow tract would be about $1,025,000 or $6,200 per gross acre, excluding engineering and other contingencies.
Testimony in behalf of the plaintiff given by the witness, Hornstein, president of the plaintiff corporation, indicates that plaintiff was aware of the existing Zoning Ordinance when this property was acquired in 1956 and that it was the intention of the plaintiff in acquiring the property to develop the land for industrial purposes, as zoned, “ as a good business investment.” The uncontradicted testimony also indicates that for a period of several years after its acquisition, the plaintiff contacted various brokers, business organizations, architects and planning consultants, but that nevertheless, despite all of its energetic efforts to develop this property for the purposes for which it was zoned, the results were negative; the principal and major objection being “that the property was locked in with only a single street for access and a single street came through the Village of Freeport” and “the street was a winding street *442 and it was locked in by residences, and of course it made it very difficult to contemplate any through trucking to an area the size that we had there.”
Other testimony indicated that the property, zoned Industrial (Y) as heretofore indicated, in accordance with the Building Zone Ordinance of the Town of Hempstead, is severely limited in its potential for industrial development by reason of area, environment, land-use restrictions, ability to attract potential industrial occupants and improvement costs.
Indeed, the Nassau County Planning Commission, on page 37 of its report entitled: “ Industry in Nassau County ”, dated August 27, 1962, also expresses the opinion that the property is a poor industrial site, stating in so many words “ the entire tract of meadow land cannot be classified as good industrial property mainly because access to the site is very poor. Parkway access would be an expensive and, due to expected Long Island State Parkway opposition, a difficult solution. Some limited public use is more desirable and the eventual elimination of the one industrial use (a six-acre junk yard) would be necessary. At present, there is adequate vacant industrial land in the Village of Freeport to meet the needs of this area”. In oppostion to a mass of potent and credible evidence concerning the undesirability of this tract for the purposes for which it is zoned and the impractical and unrealistic application of ,such a zoning ordinance for this area, the defendants offered two expert witnesses who, in effect, attempted to establish that there were three other areas in the Town of Hempstead comparable to the situation pertaining to the Cow Meadow area, namely Inwood, Oceanside and Island Park. However, a careful examination of their testimony in the light of all of the testimony offered during the trial of this action, and a careful examination of the respective sites which were cited and the industries located therein, and indeed the testimony elicited from these same experts on cross-examination, prove overwhelmingly that most of the uses established by industry in the Inwood, Oceanside and Island Park areas are nonconforming uses and are of such a character as would not be permitted under the Zoning Ordinance applicable to Cow Meadow, namely oil tank farms, concrete block plants, asphalt plants and sand and gravel plant operations. Also, the three sites offered as comparable situations all have far greater access facilities than are available to the tract in question.
It is well established that the burden of proof necessary to declare an ordinance invalid is upon the party who attacks the validity of that ordinance. If a zoning ordinance is reason *443 ably debatable the judgment of the legislative body, the Town Board in this case, is conclusive (Rodgers v. Village of Tarrytown, 302 N. Y. 115; Shepard v. Village of Shaneateles, 300 N. Y. 115; and this presumption of constitutionality must be disproved beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215, 218).
This court must determine whether this burden has been sustained by the plaintiff in this case.
There is an abundance of testimony proving that the plaintiff made a diligent effort to develop the area iñ question for the purposes permissible under the Zoning Ordinance, but failed; failure being due primarily to the inaccessibility and impractical availability of the premises for the purposes for which it was zoned 33 years ago when most of the surrounding areas were of a substantially different character.
Protracted negotiations were had with such firms as the Long Island Lighting Company, and others, all to no avail.
Plaintiff applied to the defendant Town Board for a rezoning to garden apartments, but the application was denied. It was conceded that plaintiff’s application for rezoning had indicated that the residential development of the property would require erection of a grammar school and of a junior high school. Testimony also indicated that the Village of Freeport strenuously objected to any development of this property except for its use as a recreational development area; that recently Freeport had twice attempted by referendum to annex the property without success; and that the village appeared in opposition to the petition for a change of zoning.
It may be that the Town Board heeded the opposition of the Village of Freeport to change the present Zoning Ordinance on this property so as to prevent an increase of school population and at the same time increase the tax income to the school district. Although this may be considered as a praiseworthy objective, “it cannot be accomplished by immunizing the constitutionally protected property of others against any reasonable use in the foreseeable future or at the complete or substantial expense of others ” (Opgal, Inc. v. Burns, 20 Misc 2d 803, 806-807, affd. 9 N Y 2d 659).
Respecting the issue of the present usability of the property for industrial purposes, being zoned Industrial (Y), the testimony overwhelmingly establishes, in the court’s opinion, the impossibility and the impracticability of utilizing this property for such uses in the foreseeable future, or possibly for many years to come. On this issue the plaintiff’s witness, Philip Guss, of the engineering firm of Lockwood, Kessler & Bartlett, *444 Inc., whose report was admitted into evidence, testified that he had been assigned to investigate the development potential of the subject premises (Cow Meadow) as a project co-ordinator for his engineering firm. Testifying from his report and from an aerial photograph of the subject premises and the immediate surrounding terrain (which had been admitted into evidence), and after identifying the various properties on the aforesaid exhibits, he stated “ that the existing access is unsuitable for industrial development or any development that would generate a large volume of truck traffic ”; and that “ the major reason is the existing South Main Street as it runs through a residential area and terminates at the northern perimeter of the property.” The witness further stated that the street itself is mostly 40 feet of light-duty pavement on a 60-foot right of way and it traverses an area that is densely built up with residences, and he estimated that the volume of traffic that would be generated within the area, not necessarily by trucks but by employees within an industrial park area, which we can assume would possibly be a logical development in a tract of land of this size, would be so great that existing capacity of South Main Street to handle that volume of traffic would be exceeded even if it were improved to a heavy-duty pavement and parking were restricted along it to permit this flow of traffic. It would still travel through a densely built-up residential area. The testimony further showed that if South Main Street were widened to permit two more lanes of traffic in it, which would mean a widening of about 60 feet of pavement on about an 80-foot right of way, it would involve the residences on either side of the road which would in turn involve very substantial damages, in that property would have to be taken on either side of the road for a substantial distance through this entirely residential area. Further testimony showed that rail access would also be impractical because the land between the existing railroad line and the property is densely developed residentially; and also an investigation and study of water access indicated that this would be unfeasible because of the existing depths of channels and the existing restrictions created by bridges over those channels to the west.
Defendants attempted to develop the proposition that other access was economical and engineeringly feasible. There is no question that access by means of bridges and other major streets would be engineeringly feasible. But in view of the situation in this instance, all of these would involve such substantial expense as would make them impractical and unfeasible because of the prohibitive nature of the cost of both to the *445 owner of the property in question and to the Village of Free-port. That would all involve substantial condemnation requiring the approval of the Village of Freeport and would traverse densely residential neighborhoods. In addition to the foregoing, since the creeks are navigable waters, that would be under the jurisdiction of the United States Army Corps of Engineers, and no local authority could exercise jurisdiction thereover.
Based upon all of the testimony adduced during the trial of this action the court is convinced that the property as presently zoned cannot reasonably be developed industrially at a profit or otherwise for an unforeseeable and unreasonable period in the future.
The court cannot lose sight of the fact that the ordinance here under attack was adopted in January, 1930, and at that time may well have been a proper exercise of police power by the Town Board under the facts and circumstances then existing. ‘ ‘ By the same token, an ordinance valid when adopted will nevertheless be stricken down as invalid when, at a later time, its operation under changed conditions proves confiscatory (Abie State Bank v. Bryan, 282 U. S. 765) such, for instance, as when the greater part of its value is destroyed (Dowsey v. Village of Kennsington, 257 N. Y. 221), for which the courts will afford relief in an appropriate case ”. (Quoted with approval in Vernon Park Realty v. City of Mt. Vernon, 307 N. Y. 493, 499.)
“However compelling the future industrialization of the town may be considered by the Town Board, the solution does not lie in placing an undue and uncompensated burden on the individual owner of a parcel of land in the guise of regulation, even as a public purpose. While the Town Board has the unquestioned right to enact zoning ordinances restricting the use of property in accordance with a well-considered and comprehensive purpose to protect health, safety and general welfare, such power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably; and this is so whenever the zoning ordinance precludes the use of the property for any purpose for which it is reasonably adapted.” (Opgal, Inc. v. Burns, 20 Misc 2d 803, 808, supra.)
From the record in this case, the court is of the opinion that the plaintiff has met its burden of proof by establishing that the property in question has no reasonable possibilities for industrial uses, as presently zoned, and that the ordinance precludes the uses for which it is adapted. Under such circumstances, the ordinance and zoning map as that pertaining to the plaintiff’s property arc so unreasonable and arbitrary *446 as to constitute an invasion of property rights contrary to the constitutional due process clauses and as such are invalid, illegal and void. (See Vernon Park Realty v. City of Mt. Vernon, supra; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 230, 232; Opgal, Inc. v. Burns, supra; Corthouts v. Town of Newington, 140 Conn. 284; Comer v. City of Dearborn, 342 Mich. 471.)
Judgment will be granted declaring the present zoning of the property arbitrary and unreasonable. The court is not expressing an opinion concerning the many uses of the property for which it may be properly zoned. The court’s function is limited to a determination of whether the present zoning of the property is constitutional, and not what the zoning should be. Determination of the “ most appropriate use of the land ” is for the Town Board to determine (Nelkin v. Town of Oyster Bay, 14 Misc 2d 764, 766; Grac v. Town of Hempstead, 9 Misc 2d 935, 937-938, citing Matter of Cunningham v. Planning Bd. of Town of Brighton, 4 A D 2d 313).