Howaed T. Hogan, J.
In this proceeding in eminent domain, the county has vested title to 7.161 acres of land, some of which is marshland.
The county contends that claimants own only 6.72 acres of the land condemned and claimants assert title to 7.247 acres.
The confusion stems from the deed to claimants’ predecessor, a corporation in which claimants were shareholders. The deed to the corporation describes the boundaries by metes and bounds, but qualifies the footage distance with the words ‘plus or minus.” Similarly, the acreage conveyed is “ 6.85 plus or minus ’ ’.
There are no monuments set forth in the description, but the deed refers several times to the westerly bank of Freeport Creek. It appears that another creek, Denton Pond Creek, has also been known as' Freeport Creek, and is, in fact, a tributary of Freeport Creek. The deed’s courses and distances conform to what was, in the early 1950’s technically called Denton Pond Creek rather than Freeport Creek, but which was also known as Freeport Creek. The court finds that the parties to the conveyances intended the Denton Pond Creek portion of Freeport Creek to be the boundary. The court further finds that there is no evidence sufficient to establish the county’s contention that the westerly side of Denton Pond Creek has been shifted by claimants.
Since the distances in the deed and the acreage set forth are approximate, the court finds that claimants have title to the entire area taken, which is shown by the vesting map to be bounded by Denton Pond Creek. Claimants have not proven that the area taken contains the additional .086 acres claimed, and the award herein shall be computed on the basis of the 7.161 acres shown on the vesting map.
There is a great divergence in the value placed upon the subject property by the respective experts. The parcel, zoned for ‘ Industrial ’ ’ use, is bounded on the north by single-family residences in a residential zone. To the south is a large tract of land which was zoned for “ Industrial” use up until 1963, when the Supreme Court, Nassau County, invalidated such *152 zoning on the ground that it had become arbitrary, capricious and unreasonable in that the area had become residential and the property could not be used for industry.
The subject property has been used since at least 1950 as a junk yard and thereafter junk yards have been prohibited by the town zoning ordinances. Accordingly, at the date of vesting herein, the property was under a nonconforming use.
Claimants’ appraiser values the property under such nonconforming use, and places a premium on it due to the fact there are few junk yard sites left in the county, none of which are available nor which have recently been sold. His opinion as to value is $87,120 per acre, or $631,000 for 7.247 acres.
The petitioners’ appraiser asserts that such use can be terminated at any time, and accordingly the highest and best use is not for junk yard or industrial use, but rather for development into single-family homes. He takes into consideration the cost of removal of the junk and of replacing unsatisfactory fill to arrive at a total damage of $17,000 an acre, or $114,400 for 6.72 acres.
It is well established that a special use to which the property is being put at the time of the taking must be taken into consideration to arrive at highest and best use (Sparkill Realty Corp. v. State of Neto York, 254 App. Div. 78, affd. 279 N. Y. 656).
The comparable sales submitted by the claimants are all of large prime industrial sites not comparable to the subject property, but, they claim, are of similar value due to the premium they place on the subject property for use as a junk yard.
There is no question that the land as used is of higher value than without the nonconforming use, but, by the same token, the value placed upon it by claimants is unrealistically high. The fact that the Town Board could terminate this use at any time materially lessens its value as compared with a permitted use (see People v. Miller, 304 N. Y. 105; Harbison v. City of Buffalo, 4 N Y 2d 553). Moreover, Horn Constr. Co. v. Town of Hempstead (41 Misc 2d 438) demonstrates the unrealistic nature of the industrial zoning in this area.
The court, therefore, values the property as filled and ready for development for single-family homes as established by petitioners’ appraisal, but awards an additional 20% as a premium, not for the taking of the business, but rather for the premature extinguishment of the nonconforming use (see Matter of Port of N. Y. Auth., 1 A D 2d 801, rearg. den. 1 A D 2d 885, mot. for lv. to app. dsmd. 1 N Y 2d 828, revd. 2 N Y 2d 296).
*153 The award to claimants is therefore:
7.161 acres at $17,000 per acre.............$121,737 Rounded to ...................................$122,000
Premium for nonconforming use 20% of $122,000................................ 24,400
Total Award................................$146,400