William E. Brennan, Jr., J.
On the south side of Hungry Harbor Eoad in the unincorporated area of the Town of Hempstead known as North Woodmere lies an 11.1 acre parcel of real estate which is the subject of this litigation. This parcel, bounded on the south and on the east by a county recharge basin, on the north by the road and on the west by residences under construction, is what remains of a 40-acre tract of unimproved marshland acquired by the defendant during the last decade. From 1944 until very recently, the entire 40 acres were zoned by the plaintiff town for business purposes. This tract, in turn, is but a part of a much larger area of some 400 acres, all of which has been developed by the defendant for residences.
Through the years, defendant has, through conveyances to builders and direct action, developed approximately 29 acres *314 of the 40-acre tract for one-family dwellings, some of which are completed and occupied and others of which are still under construction. The residential character of these developments is protected not by zoning, which remains business, but by restrictive covenants contained in all the deeds affecting the developed areas. During this developmental stage it was the intention of the defendant to erect a shopping center on an undetermined portion of the tract, but the precise location of the proposed center was not determined until June 9, 1960, when the defendant entered into a contract with three developers, Messrs. Levine, Hyman and Schwartz, to sell the subject 11.1-acre parcel to them for use as a shopping center for the sum of $439,750. This contract contemplated the continuance of the business zoning up to the time of closing.
In July of 1960 defendant filed with the Town Building Department an application for a building permit, but before it could issue, extensive soil analyses were required, and defendant, as late as April of 1961, submitted samples and other data to the department. In June of 1961 it was determined that the premises were safe and suitable for the proposed use, but at this point a series of events occurred, a recital of the chronology of which is essential to decision.
On July 25, 1961, and after all obstacles to construction had apparently been removed or overcome, the Town Board acted upon a petition that certain property owners in the immediate vicinity to the affected tract had presented some 14 months-before, in May of 1960, requesting a rezoning of the 11.1-acre parcel from business to Residence B. The board adopted a resolution calling for a public hearing on the rezoning proposal, and set August 29, 1961 as the date for the public hearing. The defendant immediately demanded its building permit. The Building Inspector refused. The defendant then invoked the process of this court as petitioner in an article 78 proceeding in the nature of a mandamus, and on August 16, 1961 Mr. Justice Farley issued an order directing the Building Inspector forthwith to issue the permit. The permit was issued the following day and the defendant immediately proceeded with construction. This construction, (though interrupted for a few days because of a temporary restraining order issued in a collateral action instituted by some of the property owners and later vacated) continued up to and including September 8, 1961, at which time the Town Board effectively changed the zoning from business to Residence B.
The plaintiff town now seeks permanently to enjoin the defendant from erecting or using any building on the affected parcel *315 for any purpose other than that permitted in its Residence B Zone. The defendant counterclaims for a judgment declaring that he has vested right to use the premises as a shopping center and that the ordinance as amended on September 8, 1961 is unconstitutional as applied to the parcel in question. At the inception of the trial leave was granted to the respondents Wager, Gesser and Ellis (some of the property owners who signed the petition which resulted in the rezoning and who instituted the collateral action above referred to) to intervene as parties respondent in opposition to the counterclaim.
The legislative act of the Town Board in amending the ordinance is presumptively valid (Shepard v. Village of Skaneateles, 300 N. Y. 115) and since there is no proof in the record even tending to show that the amendment bore no relationship to the public health, safety and welfare, or that it resulted in the impairment of the obligations of the contract, the contentions of the defendant in these respects may be dismissed out of hand.
The first question to be considered, then, is whether or not the defendant was, on September 8, 1961, possessed of a vested right to the use of the premises as a shopping center. His claim in this regard rests upon three separate but cumulative theories: (1) the expenditure, from August 17 through September 8, 1961, of the sum of $15,600 in the actual construction of one of the buildings of the shopping center, including driving piles, capping- piles, erecting footings and foundation wall and cinder block and brick on the top of the wall, pursuant to the valid, unrevoked building permit; (2) the additional expenditures and improvements which could have been made under the permit if it had been timely issued by the town and if its exercise had not been temporarily restrained; and (3) the expenditure, prior to the issuance of the permit, of the sum of $120,000 by defendant for the widening of Hungry Harbor Road from a 50-foot to an 80-foot artery, which widening, it is argued, was done for the exclusive purpose of accommodating the proposed shopping center at its eastern terminal. The defendant has failed to sustain his burden of proving that the widening of Hungry Harbor Road was accomplished for the exclusive purpose of accommodating the proposed shopping center. Indeed, the testimony of the witnesses Dwyer and Berry indicates, and the court finds, that the widening was equally consistent with residential development. Thus the admitted expenditure of $120,000 attributable to the widening, cannot be considered in determining whether the defendant had a vested right in the use of the 11.1-acre parcel as a shopping center. There is no special connection between the *316 expenditure and the proposed use. (See Matter of Golden City Park Corp. v. Board of Standards & Appeals, 263 App. Div. 52, 54; affd. 289 N. Y. 720.)
Nor can the defendants here claim the benefit of what they • might have expended to improve the property as a shopping center if the permit were timely issued, if they weren’t forced to bring article 78 proceeding to obtain the permit, and if they weren’t subsequently restrained from proceeding with construction for a short time by virtue of the process in the collateral action. While such proof indicates that defendant took every legal step available in order to perfect his use, it is of no assistance in calculating the “ dollars and cents ” proof of substantial investment. The most such speculations might accomplish is perhaps to tip the scales in favor of vested rights where the other proof is evenly balanced on the substantiality of the investment.
We are therefore left with the expenditure by the defendant of the sum of $15,600 in actual construction of the exterior walls of one building of the shopping center, and the question is simply whether or not such an expenditure is substantial. If it is, the defendant has a vested right, if it is not, he has not. (People v. Miller, 304 N. Y. 105.)
It may be assumed at the outset that the sum of $15,000 is a substantial one. The test of substantiality in this connection, however, cannot be met by the mere isolated, unrelated recitation of a dollar figure. Substantiality is to be determined, rather, by an assessment of the proportion which the expenditure bears to the total expenditure which would be required to complete the proposed improvement. (Matter of Glenel Realty Corp. v. Worthington, 4 A D 2d 702.) Viewed in this light the defendant’s investment is not only insubstantial, but minimal. It is thus concluded that defendant has proven no vested right to tho use of the property as a shopping center. The court’s personal perusal of the property confirms this conclusion.
The next question presented is the defendant’s request that the amended ordinance be declared unconstitutional as confiscatory. In this connection the town contends that defendant has not exhausted his administrative remedies. The contention is utterly without merit since the size of the instant parcel would appear to make a variance application futile (see Gardner v. Le Boeuf, 24 Misc 2d 511, 515), and since the Board of Appeals would have no power in any event to overrule the recent legislative act of the Town Board under the pretext of granting a variance. (Levitt v. Incorporated Village of Sands Point, 6 N Y *317 2d 269, 273.) The constitutional question is thus squarely presented.
The test to be applied in order to determine whether or not an ordinance works a confiscation upon the owner of a particular plot of land, and is, therefore, unconstitutional as applied to that parcel, is one of determining whether the restrictions imposed by the ordinance preclude the use of the property for any purpose to which it is reasonably adapted. (Arverne Bay Constr., Co. v. Thatcher, 278 N. Y. 222.) Thus, if the 11.1-acre parcel here is reasonably adaptable to residential use the ordinance must be upheld, and the burden of proving that it is not reasonably adaptable for such use rests upon the assailant, and must be demonstrated beyond a reasonable doubt. (Wiggins v. Town of Somers, 4 N Y 2d 215.) The defendant here concedes that the property may be developed for residential use, but maintains that to do so would be to cause him substantial financial loss, a factor which would make such development entirely ««reasonable.
In the Arverne case (supra), the court noted: (p. 232) “ We have already pointed out that in the case which we are reviewing, the plaintiff’s land cannot at present or in the immediate future be profitably* or reasonably used without violation of the restriction. An ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property.”
In using the word 1 ‘ profitably ’ ’ throughout the decision, the court undoubtedly intended that monetary considerations be calculated in determining what is or is not “ reasonable ”. Later cases are in accord with this reasoning. (Scarsdale Supply Co. v. Village of Scarsdale, 212 N. Y. S. 2d 878 [retrial after Court of Appeals opinion in same case 8 N Y 2d 325]; Opgal, Inc., v. Burns, 20 Misc 2d 803, affd. 10 A D 2d 977, affd. 9 N Y 2d 659; Rochdale Constr. Corp. v. Incorporated Vil. of Cedarhurst, 94 N. Y. S. 2d 601; affd. 275 App. Div. 1043, affd. 301 N. Y. 519.)
In determining the reasonableness of such residential development, then, economic feasibility would appear to be one of the vital elements to be considered. It is, of course, true that a property owner is not entitled to the most profitable use of his land, McCabe v. Town of Oyster Bay (24 Misc 2d 840). It is also true that mere lessening of profits does not render a *318 zoning ordinance confiscatory (Levitt v. Incorporated Village of Sands Point, 6 N Y 2d 269, supra.) Where, however, in addition to loss of most profitable use, and in addition to actual loss of profits under a contract, an owner of property is compelled by an ordinance either to leave the land vacant for the indefinite future, or develop it for the more restricted use at a substantial loss of his actual investment, the land can be said not to be 11 reasonably ’ ’ adapted to the use and the ordinance may be held confiscatory. (Matter of Eaton v. Sweeny, 257 N. Y. 176; Dowsey v. Village of Kensington, 257 N. Y. 221; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493.)
To apply such principles to the case at bar, resort must be had to dollars and cents proof, and findings made as to the total investment of the defendant in the land and the market value of the land for residential development.
In 1960 the defendant purchased this plot from a corporation of which he was the principal stockholder for the sum of $177,600. Some 10 years before, the corporation had purchased the plot for $44,400, and a question has arisen concerning which of these figures should be used in establishing the base investment. If some evidence had been offered to show that the transfer in 1960 was only a paper transaction or was made in bad faith for the purpose of establishing an artificial value for the property, the lower figure might be considered proper. No such proof was offered, nor, indeed, was any attempt made on cross-examination to weaken the effect of the testimony or elicit any details of the transaction. Taxes were paid on the capital gain realized and there is nothing in the record which indicates that the price paid was at variance with true value. The sum actually paid, then, i.e., $177,600, must be considered as the defendant’s investment.
To this figure must be added the following sums:
(1) $140,000, cost of 151,000 cubic yards of hydraulic fill to bring the grade to elevation 8%, the minimum grade required by the town’s building code for business development, which was actually expended by defendant between June, 1960 and April, 1961.
(2) $8,440, cost to defendant of additional soil tests to comply with town’s requirements before the building permit could be issued.
(3) $9,000, cost of engineering and development plans for the proposed shopping center.
(4) $16,300, cost of widening Hungry Harbor Eoad attributable to the 11.1-acre parcel. (In this connection the court *319 holds that the widening of the road was of' direct benefit not only to this 11.1 acre parcel, but also to 70.4 additional acres representing the total acreage shown on nine maps filed by the defendant with the County Planning Commission on which the widened road was delineated. Thus, ll/81sts of the stipulated cost of $120,000 for the road widening is found to be a direct investment in the parcel. )
Considering the initial investment and the foregoing expenditures already incurred, it is found that the defendant’s total present investment in the 11.1-acre parcel amounts to $351,340.
Against the investment must be compared the present value of the land as zoned for residential purposes. The court finds that the 11.1-acre parcel will yield 47 plots of 6,000 square feet each. Each plot has a market value of approximately $6,000. Thus, the total market value of the parcel zoned for residential purposes is $282,000. However, iii order to bring the property into marketable condition, the entire parcel must be filled with approximately 11,000 cubic yards of additional fill in order to bring the elevation to grade 9, the minimum elevation required for residential construction. The cost of this additional fill, inclusive of incidental survey and engineering plans, is in the vicinity of $22,000, which figure must be deducted from the foregoing valuation to arrive at the true net market value of the 11.1-acre parcel, which is $260,000.
The defendant has thus invested in this 11.1 acre parcel of land a sum in excess of $350,000, exclusive of real estate taxes based upon business-zone assessed valuations which the defendant has paid for 10 years, and also exclusive of a claimed loss of plot yield which is found to be too speculative to constitute proof of investment. Against this figure he has a contract to sell the parcel for $439,750, a transaction which would yield an obviously substantial profit. The loss of profits cannot, as has been noted above, be considered in determining constitutionality. The fact is, however, that the amendment of the ordinance has not only resulted in such loss of profit, but has also left the defendant with a parcel of property which, if developed for the only purpose permitted in the ordinance, will result in a loss of investment of over $90,000. Involved, therefore, is an adjustment between the wants of a community, perfectly or imperfectly expressed through its local legislative body, and the rights of the owner of the property. The owner’s right of user here is so limited by the restrictive ordinance that there is in reality an economic talcing of his property, even though he is left with title, possession and a possibility of use for the restricted purpose. The amendment is thus confiscatory
*320 in that it precludes the use of the property for any purpose to which it is reasonably or economically adapted. It is accordingly held unconstitutional.
The plaintiff’s complaint is dismissed and judgment may he entered by the defendant on the counterclaim in accordance with this decision.

(Emphasis supplied).