## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Salem Fields, L.L.C.

v.

Spotsylvania County
Zoning Appeals Board

September 6, 1996

Case No. L96-253

BY JUDGE WILLIAM H. LEDBETTER, JR.

The issue in this case is whether a subdivision developer who has obtained preliminary plat approval and expended funds toward development of its parcel has a "vested right" to proceed with the project despite an intervening zoning reclassification and an ordinance change that tightened the time requirements for final plat approval and recordation.

### Facts

Salem Fields, a limited liability corporation, owns a tract of land on Salem Church Road on which it proposes to develop Deer Run Subdivision, a 27-lot residential subdivision. On January 31, 1995, the County approved the developer's preliminary subdivision plat pursuant to Virginia Code § 15.1-475(C) and the County ordinance.

At the time Salem Fields obtained preliminary plat approval, the zoning classification (A-1) for the property allowed subdivisions with lot sizes of one acre of more. The preliminary plat of Deer Run depicts lots with minimum size of one acre. Subsequently, the County amended its zoning ordinance to increase the minimum lot size in an A-1 zoning district from one acre to two acres.

Also, at the time Salem Fields obtained preliminary plat approval, the County ordinance required that a developer submit its final subdivision plat for approval within one year of preliminary plat approval and that it record the final plat within six months of final approval. Subsequently, the County amended its ordinance to require that the final plat be approved *and* recorded within one year of preliminary plat approval.

In reliance on the preliminary plat approval and a written notice from the County that the final plat had to be submitted within one year, Salem Fields proceeded with the Deer Run project. It hired an engineering firm to develop construction plans and the final plat at a cost of $38,080.00. It obtained the services of another firm to delineate wetlands, to locate drain-fields on the lots, and to coordinate review of the project by the appropriate agencies. These services cost $16,800.00. Further, the developer obtained a construction bond from a local bank. The bond fee was $2,190.00.

On January 29, 1996, two days before the old one-year deadline for submittal of the final plat, Salem Fields submitted its final plat and accompanying documentation for approval. The Department of Transportation had approved the plan and signed the plat. The Health Department had conducted on-site review of the drain fields and reviewed the plat but had not signed the plat. One plat change was necessary regarding part of a drainfield. The change was made by the developer's engineer and faxed to the County. A planning department official telephonically approved the correction. Salem Fields then set out to obtain the signature of a Health Department official.

During the course of this process to submit its plans for final approval, Salem Fields learned for the first time that the County had amended its ordinance so that the final plat had to be *recorded*, not merely submitted for approval, by January 31, 1996. Despite redoubled efforts, the developer could not assimilate seven complete sets of the final plan, obtain the Health Department signature, and present the package in recordable form by the close of business on January 31, 1996.

The developer did not appeal the County's refusal to accept its final subdivision plat for approval under Virginia Code § 15.1-475(B)(3) which allows a subdivider to appeal to circuit court within 60 days of disapproval of a subdivision plat. Instead, the developer requested a determination of the zoning administrator pursuant to Virginia Code § 15.1-492 and § 15.1-491(d)(iii) that it has vested rights in the development of Deer Run. The request was made in writing on February 8, 1996. On March 8, 1996, the

zoning administrator determined that Salem Fields does not have a vested right to develop Deer Run because "the expenses incurred in good faith reliance on the preliminary plan are not of sufficient magnitude."

Salem Fields appealed that determination to the Board of Zoning Appeals (BZA). After a public hearing, the BZA voted 4-2-1 on June 17, 1996, to uphold the zoning administrator's determination that Salem Fields has no vested right to continue with its Deer Run project.

Salem Fields filed its petition for writ of certiorari on June 21, 1996. The writ issued; the County transmitted the record in the case; the County filed a plea in bar and grounds of defense; and the court heard arguments on stipulated facts on August 19, 1996.

## Plea in Bar

In its plea, the County contends that this action is barred because the developer did not appeal pursuant to Virginia Code § 15.1-475(B)(3). For the reasons stated, the plea will be denied.

Judicial review under § 15.1-475(B)(3) is available when the planning agent of the locality *disapproves a plat* and the subdivider contends that the disapproval was not properly based on the applicable ordinance or was arbitrary and capricious. In this case, the final plat was not "disapproved." Rather, its submittal was rejected because the planning staff applied the new time requirements and determined that the final plat *"could not be recorded* before the close of business on January 31, 1996." See the letter from planning agent to Salem Fields dated February 6, 1996.

The zoning administrator has authority to make determinations regarding vested rights under Virginia Code § 15.1-491(d)(iii). That determination is appealable to the BZA (§ 15.1-496.1), and the BZA's decision is subject to judicial review (§ 15.1-497). This is the route taken by Salem Fields. Obviously, it was a route that the County deemed proper since the zoning administrator made a determination, the BZA accepted the appeal and conducted a public hearing, the zoning administrator filed a lengthy memorandum with the BZA, the BZA made a decision, and the County formally notified Salem Fields of the BZA decision and the planning agent's consequent position regarding the subdivision plat.

Even assuming that the planning agent's refusal to accept the final plat was a "disapproval" so that the developer could have appealed under § 15.1-475(B)(3), the court is of the opinion that § 15.1-491(d)(iii) was an appropriate optional administrative avenue under the particular circumstances of this case. As noted, the planning agent's refusal to accept the

final plat was based on his view that the new plat-filing deadline applied and that the plat *could not be recorded* by the close of business on January 31, 1996. Certainly, the developer was aggrieved by that decision because it would mean that the plat approval process would have to begin anew. However, the greater grievance, the one that everyone knew was the primary grievance, was that any new plat approval process would be governed by the intervening zoning amendment, so that lots in Deer Run Subdivision would have to be two acres or more thereby reducing by 20% the number of salable lots in the project. Thus, the issue of "vested rights" was the focus of the controversy. That issue could be resolved by resort to the procedure under § 15.1-491(d)(iii).

It is also worthy of note that the developer did not pursue the administrative procedure provided in § 15.1-491(d)(iii) because it missed the 60-day appeal deadline in § 15.1-475(B)(3). The record shows that the developer requested a vested rights determination of the zoning administrator within ten days of learning that the planning agent would not accept the final plat and within two days of receiving written notification of the County's position on the matter. The developer has not been dilatory in pursuing administrative relief of that decision or judicial review of the denial of relief.

Accordingly, the controversy is properly before the court pursuant to § 15.1-497.

### Vested Rights

Generically, a vested right is a right so completely and definitely accrued to or settled in a person that it cannot be defeated or cancelled and which government should recognize and protect according to then current rules of law. See *Black's Law Dictionary* (4th Ed. 1951), p. 1735; also *Kennedy Coal Corp. v. Buckhorn Coal Corp.*, 140 Va. 37 (1924). The concept has been deeply rooted in land use regulations at least since such regulations gained widespread usage and judicial approval more than half a century ago.

In land use regulations, "vested rights" is closely tied to a related concept, "nonconforming use." The reason for the application of these concepts to land use regulation is obvious. No community exists as a tidy compartmentalization of land uses. Land to be zoned or its use otherwise regulated is seldom vacant or idle. Land is almost always occupied or in use to some degree at the time a land use ordinance is adopted or amended, by free-minded landowners who have been using or who have

made preparations to use the land. Although these pre-existing uses may, if allowed to continue, imperil a comprehensive plan for the community, land use laws cannot simply eliminate all existing uses that may be incompatible with the community plan. It was established early on that many of these pre-existing uses, which became known as nonconforming uses, constitute legally-protected vested rights. Consequently, land use regulations have to be drafted and applied so as to avoid a frontal attack on such uses but to accommodate them when necessary and to limit them and phase them out where possible.

The most difficult problem in this area of land use law is and always has been to determine what constitutes a protected "use." If the activity is significant enough and it can be said to have existed prior to enactment of the land use regulation or amendment, the landowner has a "vested right" to continue such activity although it does not conform to the new regulation or amendment.

Virginia has codified the protection of vested rights. Virginia Code § 15.1-492 provides that nothing in the land use statutes shall be construed to authorize impairment of vested rights. The term is undefined, leaving its definition to the courts.

If a parcel of land is actually in use at the time the regulation is adopted or amended, the authorities speak of nonconforming uses and the guiding principles are more focused. If, on the other hand, a landowner is merely contemplating a use and has begun planning and preparation for it, the situation is murkier. In the latter sort of case, the authorities seldom speak of "nonconforming use" at all but resort to the underlying premise, "vested rights," in resolving the controversy.

Any analysis of "vested rights" in the context of planning-and-preparation must start with the settled notion that a landowner does not have a vested right in an existing classification of his land. Contemplated use, without more, is not considered a vested right. Further, purchase of land in reliance on the existing zoning classification does not gain the purchaser a vested right to begin a use allowed by the classification if, before he does anything more, a regulation is adopted that prohibits the use. Even certain preparations for use, such as land-clearing, or filing an application for a permit, may not give rise to a vested right in the contemplated use.

For those cases not involving actual use of land on the effective date of the ordinance or amendment, the Supreme Court of Virginia has adopted a three-part test to determine whether the landowner has acquired a vested

right to use the land in a particluar manner. First, the landowner must identify a significant official governmental act that would permit the landowner to conduct a use that otherwise would not have been allowed. Second, the landowner must establish that he has taken action in good faith reliance on the governmental act. Third, the landowner must show substantial change in position or extensive expenses or obligations for expenses incurred in good faith reliance on the governmental act. See *Holland v. Board of Supervisors*, 247 Va. 286 (1994); *Board of Supervisors v. Medical Structures, Inc.*, 213 Va. 355 (1972); *Board of Supervisors v. Cities Service Oil Co.*, 213 Va. 359 (1972).

In this case, the County concedes that the developer can identify "a significant governmental act," e.g., preliminary plat approval on January 31, 1995, to support the vested rights claim. (This circumstance distinguishes this case from *Town of Stephens City v. Russell*, 241 Va. 160 (1991), and *Notestein v. Board of Supervisors*, 240 Va. 146 (1990).) The County also concedes that the developer has taken action in good faith reliance on the preliminary plat approval. Finally, the County acknowledges that the developer has expended more than $57,000.00 for development of the subdivision.

The sole question in the case, then, as framed by the parties, is whether the developer's expenditures are of sufficient magnitude to give rise to a "vested right." Salem Fields contends that its expenditures were "substantial," entitling it to a vested right to proceed with the subdivision under the ordinance in existence on January 31, 1995. The County argues that the expenditures were not significant when compared with the total expenses that the developer would have to incur to develop the subdivision. The County also argues that most of the expenditures are "recoverable," e.g., they can be applied to development costs of a subdivision under the new zoning classification.

In *Medical Structures, supra*, the landowner had purchased a tract of land for which a special use permit had been issued, spent $59,000.00 for engineering and architectural plans, made a bond deposit, and obtained site plan approval, before the County amended its zoning ordinance to prohibit the use contemplated by the landowner. The Supreme Court held that where a special use permit has been granted, a *bona fide* site plan has been approved and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the landowner has a vested right to the land use described in the use permit, and he cannot be deprived of such use by subsequent legislation.

Similarly, Salem Fields obtained approval of its preliminary plat and diligently pursued development of the subdivision, incurring substantial engineering and site plat costs, posting a bond, and submitting its final plat for approval within the pre-existing one-year time deadline with only a few details missing, all in good faith reliance on the preliminary plat approval and the County's one-year time requirement for *submitting* the final subdivision plat.

Nevertheless, the County asks the court to adopt a two-prong "substantiality" test created in *Town of Homestead v. Lynne*, 222 N.Y.S.2d 526 (1961). Such a test, according to the County, would provide a "rational basis" for this case and would furnish the County with "guidance for future administrative vested rights determinations." The two-prong substantiality test enunciated in *Lynne* requires a showing that the expenses incurred are not recoverable and that they are "substantial" in proportion to the total expenditures which would be required to complete the proposed improvement.

The court rejects the *Lynne* test of substantiality for several reasons.

First, Virginia has not adopted the test; in fact, no Virginia case has incorporated or even referred to either prong of the test. For example, although Virginia case law speaks of "substantial expense" as an element to be satisfied in a vested rights dispute, no case can be found for the proposition that "substantial expense" is to be determined by an assessment of the proportion which the expenditures bear to the total expenditures that would be required to complete the project.

Second, to apply the "nonrecoverability" prong of the test to vested rights in the context of subdivision development would engage the court in distorted analysis and word games. Where, as here, the ordinance amendment does not absolutely prohibit land subdivision but significantly reduces the number of lots allowable in a subdivision, it would always be the case that the developer could "recover" some or all of his development costs in the sense that he could apply them toward development of the subdivision allowed under the new classification. However, could he "recover" his costs in the real, e.g., economic sense? Common sense dictates that the answer in most cases would be no. A subdivider determines the feasibility of his proposed subdivision by calculating his costs and dividing those costs by the number of saleable lots in the proposed subdivision. He then projects the price that each lot would bring in the marketplace. If the total projected sales price of the lots is acceptably higher than the per-lot cost of development of the subdivision, he would

conclude that the effort is economically feasible. If, after he makes these calculations, obtains governmental approval, and proceeds to spend money on the project, the government reduces the number of lots allowed in the subdivision, how can he *financially* "recover" that money? The *Lynne* test ignores this basic economic truth about subdivision development.

Finally, the *Lynne* test must be rejected because the decision in which it is enunciated reflects New York's view of vested rights, which is a decidedly minority view. In that case, the landowner had actually begun *construction* pursuant to a building permit before the zoning change. He had installed footings, foundations, cinder block, and brick toward erection of one of the buildings in the shopping center. Under those circumstances, practically every jurisdiction except New York would determine that the landowner acquired a vested right to continue the activity as a nonconforming use, regardless of the relationship between expenses incurred and the cost of the whole project.

On balance, the court is of the opinion that it cannot devise a specific "test," much less the *Lynne* test of substantiality, by which to resolve the "substantial expense" question in every vested rights case. Instead, Virginia statutory and decisional law requires that each case be decided on its merits according to the particular facts of the case, giving due deference to the presumed correctness of the BZA decision. See, e.g., *Foster v. Geller*, 248 Va. 563 (1994).

For the reasons explained, the court is of the opinion that Salem Fields incurred substantial expenses and otherwise substantially changed its position toward development of Deer Run Subdivision before the County amended its ordinance. Because the County concedes that those expenses were incurred in good faith reliance on a significant official governmental act, it follows that Salem Fields acquired a vested right to continue with its development in conformance with the approved preliminary plan pursuant to ordinances in effect at that time.