# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Cristine P. Lynch et al.

v.

Spotsylvania County
Board of Zoning Appeals

April 15, 1997

Case No. CL97-14

BY JUDGE WILLIAM H. LEDBETTER, JR.

A two-part question is presented in this zoning appeal: is the zoning administrator empowered by Virginia Code § 15.1-491(d)(iii) to make a vested rights determination based on a development proposal rather than an existing state of facts; and, if so, was his decision in this case plainly wrong?

## *Background*

Fox Point, Inc., is in the process of developing a large tract of land between Smith Station Road and Leavells Road known as Fox Point, a 701-lot residential subdivision. In 1989, the County tentatively approved the developer's preliminary plan for the subdivision pursuant to Virginia Code § 15.1-475(c) and the County ordinance.

Later, the developer submitted final plats for the first twelve sections of the subdivision. The County gave final approval to those plats pursuant to Virginia Code § 15.1-475(d). The plats were recorded.

Over the next several years, the developer built many houses in the first sections and created a cohesive infrastructure of streets, utilities, and amenities such as clubhouse, pool, and tennis courts.

In 1995, the County amended its zoning ordinance, increasing the minimum lot size in A-1 zoning districts to two acres. Fox Point is in an A-1 zoning district. The lots in Fox Point are less than two acres.

Concerned that the County may balk at allowing it to build out the unrecorded portions of the subdivision without complying with the new lot size requirements, the developer asked the County zoning administrator to determine that it had a vested right to develop the entire 701-lot subdivision in accordance with the preliminary plat.

By letter dated December 18, 1995, the zoning administrator acknowledged that the developer had "vested rights with regard to the remaining 384 unrecorded lots" in Fox Point.

On August 13, 1996, the developer presented a new inquiry to the zoning administrator. In it, the developer asked whether it could revise its preliminary plat of the unrecorded portion of Fox Point in several particulars without disturbing the vested rights determination of December 18, 1995. To explain the proposed revisions, the developer furnished a plat showing a "proposed road realignment" and a "concept preliminary plan" for a new subdivision, Cedar Ridge, which would be superimposed upon 100 of the 384 lots in the unrecorded portion of Fox Point. Those 100 lots are located on the side of Fox Point nearest Leavells Road. According to the revised plan, Cedar Ridge would be a separate and distinct subdivision. This would be accomplished by redefining the eastern boundaries of Fox Point, making Cedar Ridge accessible only from Leavells Road, and terminating the interior streets in cul-de-sacs. Similarly, streets in Fox Point closest to Cedar Ridge would end in cul-de-sacs thereby preventing movement of vehicular traffic between the two subdivisions and between Leavells Road and Smith Station Road. A net loss of five lots would result from the reconfiguration.

On September 4, 1996, the zoning administrator wrote that he had determined that the proposed revisions "will not affect [the developer's] vested development rights to complete the project." He noted that a key element in the decision "is ... that the ... proposed plat revisions would decrease the total number of single family lots, which in turn reduces the nonconformity with respect to the new County ordinance."

Some of the homeowners in Fox Point appealed the zoning administrator's determination to the County Board of Zoning Appeals (the BZA). After notice and public hearing, the BZA affirmed the zoning administrator's determination.

Pursuant to Virginia Code § 15.1-497, the homeowners petitioned this court for review of the BZA decision. A writ of certiorari issued; the County transmitted the record; and the court heard arguments on March 21, 1997.

*Authority of Zoning Administrator*
*Under Section 15.1-491(d)(iii)*

Prior to 1993, the zoning administrator was not empowered to make a binding determination whether a property owner had acquired a vested right in a land use. *Holland v. Zoning Administrator*, 241 Va. 553 (1991). In response to *Holland*, the legislature amended Virginia Code § 15.1-491(d) as follows:

> [The zoning administrator's] authority shall include ... (iii) in specific cases, making findings of fact and, with concurrence of the attorney for the governing body, conclusions of law, regarding determination of rights accruing under § 15.1-492.

Section 15.1-492 protects vested rights but allows localities to adopt zoning ordinance provisions that restrict nonconforming uses.

No one challenges the zoning administrator's statutory authority to make the vested rights determination of December 18, 1995. (In fact, no one questions the merits of that decision.) In that decision, the zoning administrator noted that the developer had received preliminary plat approval for the subdivision and, in good faith reliance on that approval, had obtained final approval of the first twelve sections (307 lots), had recorded plats of the first 307 lots, had expended substantial sums of money, and had developed "infrastructure ... and amenities for the entire unitary subdivision." Therefore, he concluded, the developer had acquired vested rights "for a final build-out of 701 single family residential lots." Although he did not say so, it is obvious that the zoning administrator made his determination in response to the developer's request for an official determination that it had a vested right to proceed with development *in accordance with the preliminary plat* which had received tentative approval several years earlier.

The zoning administrator's 1996 vested rights determination was different. There, the developer asked the zoning administrator to make a determination that it would have vested rights similar to the vested right acknowledged in 1995 *even if* the developer revised its plans for the remainder of the subdivision. As discussed above, those revisions included redefining the eastern boundaries of Fox Point, creating a new subdivision from a portion of the old, realigning streets, and reconfiguring some of the lots.

A zoning administrator acts in a quasi-judicial capacity when making determinations under § 15.1-491(d). It is axiomatic that the judiciary does not make binding determinations based upon a recitation of non-existent facts,

hypotheticals, proposals, ideas, concepts, or "what-if" suppositions. Public officers exercising quasi-judicial powers are similarly restrained. As the petitioners contend, § 15.1-491(d) empowers a zoning administrator to make a quasi-judicial determination that a person is entitled to vested rights under an *existing set of facts*.

The limitation is reflected in the statutory language. The applicable subsection authorizes a zoning administrator *to make findings of fact* (and, with the assistance of the county attorney, to make conclusions of law) *in specific cases*. When a developer posits a set of facts which are actually only proposals, ideas, or concepts, the zoning administrator is not dealing with a *specific case*. Further, he can make no "finding of fact" because there are no facts, merely postulations.

As noted in *Salem Fields v. Spotsylvania County Bd. of Zoning Appeals,* 40 Va. Cir. 289 (1996), a vested right is a right "so completely and definitely accrued to or settled in a person that it cannot be defeated or cancelled, and which government should recognize and protect according to then current rules of law." A right cannot "accrue" or "settle" in a person with respect to something that does not exist. Government cannot "recognize" and "protect" a postulation.

For these reasons, this court is of the opinion that the County zoning administrator exceeded the authority given to him in § 15.1-491(d)(iii) when he responded affirmatively to the developer's inquiry of August 13, 1996. The developer did not present a *specific case* upon which a valid and binding determination could be made. Rather, he posited a set of nonexistent facts. Not only were those facts nonexistent in 1995 when the zoning administrator made his vested rights determination, they did not exist in 1996 when the zoning ordinance was amended, the point by which any vested rights had to have accrued or settled.

This distinguishes the case at bar from *Salem Fields, supra.* There, the developer had received preliminary plat approval and had expended money in good faith reliance on the preliminary plat approval. This court held that the developer's expenditures were "substantial" and therefore the developer had acquired a vested right to continue with its development *in conformance with the approved preliminary plan in existence at the time of the ordinance amendment.*

The vested rights determination of the zoning administrator on September 4, 1996, is ultra vires and void. It follows that the BZA's decision to affirm the zoning administrator's determination is void.

## Other Matters

### (1) *Diminution of the Nonconformity*

The County and the developer contend that the zoning administrator's determination of September 4, 1996, was just a revisit of his earlier, unchallenged vested rights determination of December 18, 1995, and that he merely approved proposed minor revisions that actually would reduce the nonconformity. "Such changes may be made without losing the subdivision's protected status," they argue.

The argument is a bit disingenuous. As noted above, the developer's 1996 "concept preliminary plan," upon which the zoning administrator made his September 4, 1996, determination, does not consist only of street realignment and density reduction. The *crux* of the proposal is an entirely new subdivision, Cedar Ridge, which would supplant 100 lots of the Fox Point subdivision as shown on the preliminary plat received and tentatively approved by the County in 1989. The new subdivision would have its own entrance, and its streets would be disconnected from Fox Point by construction of cul-de-sacs. The eastern boundaries of Fox Point would be redefined, and several of the unplatted lots would be reconfigured. Persons residing on lots in some of the interior portions of Fox Point would find themselves living in houses abutting another subdivision, which may or may not contain the same quality of houses, amenities, and infrastructure as Fox Point.

*The consequence of the September 4, 1996, determination — in fact, the real reason the developer requested it — would be to allow the creation of a wholly new and distinct subdivision within the original Fox Point development without having to comply with the new zoning law.* This would be accomplished behind the veil of vested rights, constructed on the false premise that the revisions to the original Fox Point subdivision plat are insignificant, even ameliorating.

The developer has no vested rights to such a substantially-revised proposal. Thus, even if the zoning administrator had the statutory authority to make a determination in this case, the determination was wrong as a matter of law.

### (2) *Standing of the Petitioners*

The County and the developer assert that the petitioners are not "aggrieved" by the zoning administrator's determination or the BZA's decision and therefore have no standing to object.

The petitioners are residents of Fox Point. Most of them live on lots that would abut the proposed Cedar Ridge subdivision. Their lots are on streets that will be affected by the proposed realignment. Their interest in the developer's proposed revisions to the Fox Point development is immediate, direct, pecuniary, and substantial. Thus, they are aggrieved by the decisions made in this case and have standing to seek relief.

### (3) *Caveat*

This court wishes to be clear that it expresses no opinion on the merits of the developer's proposed revisions to the Fox Point preliminary plat. The court understands fully the County's argument that these revisions may indeed enhance the overall quality of Fox Point by disconnecting 100 lots and making a separate entrance for them, by reducing the total density by five lots, and by realigning the streets to form cul-de-sacs so that there will be no through traffic between Smith Station Road and Leavells Road. Whatever the merits of these proposed revisions, the court simply decides today that the zoning administrator is not empowered to approve them and to bestow upon them the lofty status of "vested rights" under the guise of making a quasi-judicial determination pursuant to § 15.1-491(d)(iii).

### *Conclusion*

For the reasons explained, the vested rights determination of September 4, 1996, made by the zoning administrator in this case is ultra vires and void. Therefore, his determination and the decision of the BZA affirming that determination will be reversed and vacated.