Argued and submitted February 8, 2011, vacated and remanded with instructions to enter judgment vacating the county's decision and remanding for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners,* 351 Or 219, 264 P3d 1265 (2011) March 28, 2012

John JOHNSON,
*Petitioner-Respondent,*

*v.*

DESCHUTES COUNTY,
a political subdivision of the State of Oregon,
acting by and through its Board of County Commissioners,
*Respondent-Appellant.*

Deschutes County Circuit Court
09CV0114AB; A144929

274 P3d 884

Steven Griffin argued the cause and filed the briefs for appellant.

Lisa D.T. Klemp argued the cause for respondent. With her on the brief were Edward P. Fitch and Bryant, Emerson & Fitch, LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Respondent Deschutes County appeals the judgment in a writ of review proceeding that vacated and remanded the hearings officer's determination that petitioner John Johnson has a vested right to complete development of one phase of his residential subdivision in compliance with waivers issued pursuant to Ballot Measure 37 (2004) but does not have a vested right to complete the remaining three phases of the subdivision. On appeal, the county contends, *inter alia,* that the writ of review court erred in determining that the hearings officer "misconstrued the law respecting 'common law vested rights.' " In light of the Supreme Court's decision in *Friends of Yamhill County v. Board of Commissioners,* 351 Or 219, 264 P3d 1265 (2011) (*Friends II*)—which was decided during the pendency of this appeal and clarified the vested rights analysis that applies in cases such as this—we reject the county's contention that the writ of review court erred in determining that the hearings officer misconstrued the applicable law. However, for the reasons explained below, we also conclude that the court erred in remanding for the hearings officer to reconsider the decision consistently with the writ of review court's findings of fact and conclusions of law. Accordingly, we vacate and remand the writ of review court's judgment with instructions to vacate and remand the county's decision for reconsideration in light of *Friends II.*

The material facts are uncontroverted. Measure 37 waivers from the state and the county allowed Johnson to develop his 52.6 acres into a 40-lot residential subdivision in four phases. Development costs—including the cost of building a residence in the first phase of the subdivision—were incurred.[1] Johnson obtained tentative subdivision approval in September 2006 and received the final plat approval for the first phase of the subdivision—which consisted of seven residential lots—before Ballot Measure 49 (2007) became effective in December 2007.[2]

---

[1] For a detailed description of the evolving legal context in which this case arose, see *Friends II,* 351 Or at 222-25.

[2] Johnson had also applied for final plat approval for the second phase of the subdivision before Measure 49 became effective. Our understanding is that

Thereafter, Johnson applied for a determination from the county that he had a common law vested right to complete and continue the development described in the waivers.[3] Johnson contended that his "substantial investment [met] the threshold for common law vesting under Oregon law."

The hearings officer explained that, "[i]n *Clackamas Co. v. Holmes*, 265 Or 193, 508 P2d 190 (1973) * * *, the Oregon Supreme Court [had] identified factors to be considered in the analysis required to determine whether there is a common law 'vested right[.]' " Specifically, in *Holmes*, the Supreme Court stated:

> "The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

*Id.* at 198-99.

The hearings officer explained that "[t]he expense/ total project cost ratio analysis in *Holmes* is not the only factor to be considered in determining whether [Johnson] has

---

Johnson's application concerning the second phase was pending and Johnson had not submitted applications for final plat approval of the remaining two phases.

[3] As pertinent here, section 5(3) of Measure 49 provides that claimants who had filed Measure 37 claims before June 28, 2007, had an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

established a vested right to continue development of the 40-lot subdivision with a dwelling on each lot." However, the hearings officer's analysis was essentially predicated on consideration of the expenditure ratio, which the hearings officer indicated "is by far the most significant factor."

In calculating the expenditure ratio, the hearings officer made three significant observations. First, the hearings officer explained that, when calculating the numerator of the expenditure ratio, "[e]xpenditures that commit the property to the particular use contemplated by the developer may be included in the ratio analysis" but that "expenditures that can be applied to other allowed uses may not be considered directed toward the purported vested right." Second, the hearings officer noted that expenditures made before the December 6, 2007, effective date of Measure 49 were made in good faith. Third, in terms of the denominator, the hearings officer explained that the projected cost of residential construction must be included in the total project cost.

In applying the ratio to the circumstances of this case, the hearings officer determined that,

"although [Johnson] has made significant expenditures toward the cost of completing Phase I of the subdivision sufficient to establish a vested right to complete that phase, * * * [Johnson's] qualified expenditures are not sufficient to establish a vested right to complete Phases II, III and IV of the subdivision or to develop dwellings on the lots in those three phases."

Johnson sought review of the hearings officer's decision in circuit court.[4]

On review, the court vacated the hearings officer's decision. The writ of review court determined that the hearings officer had erred in calculating the expenditure ratio. That determination was based on *the writ of review court's own* detailed findings of fact—many of which were contrary

---

[4] Pursuant to an order of the Deschutes County Board of Commissioners, "[f]or all applications for a common law vested rights decision pursuant to Ballot Measure 49, * * * the hearings officers' decisions shall be the final decision[s] of Deschutes County."

to those found by the hearings officer. Further, the court concluded that the hearings officer had misconstrued the law in reaching her determination. Specifically, the court explained that "[t]he hearings officer * * * erred in strictly relying on a ratio assessment rather than utilizing all of the factors required under a common law vesting analysis * * *." Ultimately, the court entered a general judgment vacating the hearings officer's decision and remanding the decision "for reconsideration consistent with the Findings of Fact and Conclusions of Law entered by *the court*." (Emphasis added.)

The county appeals. On appeal, the county contends, *inter alia*, that the writ of review court erred when it determined that the hearings officer "misconstrued the law respecting 'common law vested rights.'"

While the parties were in the process of completing their appellate briefs, we decided *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010) (*Friends I*), aff'd, 351 Or 219, 264 P3d 1265 (2011)—a case in which we examined the meaning of the term "common law vested right" as used in section 5(3) of Measure 49 and the application of the *Holmes* factors in that context. Specifically, in *Friends I*, we reasoned that,

"[i]n determining whether a claimant meets the separate requirement in section 5(3) of a 'common law vested right,' the *Holmes* factors for determining the existence of a vested right that are otherwise applied through those other parts of section 5(3) (*i.e.*, good faith, expenditures on the waived use, particular timing of expenditures) are less probative as markers of a 'common law vested right' than the factors that remain (*i.e.*, expenditure ratio, cost and location of project) in order to avoid an internal redundancy in the section. Therefore, what becomes *more* material to a section 5(3) determination are the other *Holmes* factors— the expenditure ratio, remaining issues about the adaptability of the investment to otherwise lawful uses under Measure 49, and the kind of project, including its location and costs. The text of section 5(3), then, prompts a more focused inquiry on whether a common-law vested right exists under that section than would be the normal case where none of the *Holmes* factors are predominant. Instead, the text and context of section 5(3) of Measure 49 makes a determination of the nature of the ultimate project (the

location, extent, and type of residential development and its costs) and an assessment of the expenditure ratio particularly material to a vested rights decision under the measure."

237 Or App at 177 (citation omitted; emphasis in original).

Relying on that passage from *Friends I*, the county explained that, "when evaluating whether a claimant is entitled to 'vested rights' relief under Ballot Measure 49, section 5(3)[,] this court has instructed that two *Holmes* factors are to be given primacy, the nature of the project and the expenditure ratio." Because the hearings officer's analysis comported with that analytical construct, the county asserted that the writ of review court erred in determining that the hearings officer misconstrued the applicable law in applying the *Holmes* factors to this case.

After oral argument of this appeal, the Supreme Court issued its decision in *Friends II*. Although the Supreme Court affirmed our earlier decision in that case, it clarified the proper analysis for determining whether, pursuant to section 5(3) of Measure 49, a landowner has a vested right to complete and continue development in compliance with a Measure 37 waiver. Specifically, the Supreme Court reasoned:

"We * * * conclude that the Court of Appeals erred [in *Friends I*] in holding that compliance with the terms of section 5(3) means that a landowner's expenditures necessarily will relate to the proposed use and be made in good faith. We also conclude that the Court of Appeals erred in discounting some of the *Holmes* factors and finding, as a result, that other factors were 'more material.' Having reached those conclusions, we note that all the *Holmes* factors may not apply in a given case and that the extent to which they do apply will presumably vary with the circumstances of each case. We also note that, when a landowner seeks to establish a vested right because 'substantial costs toward completion of the job * * * have been incurred,' only one of the *Holmes* factors entails consideration of the 'costs * * * incurred'—namely, 'the ratio of expenses incurred to the total cost of the project.' *See Holmes*, 265 Or at 197 (listing that factor). That factor provides an objective measure of how far the landowner has proceeded towards completion

of the construction. As such, we think it provides the necessary starting point in analyzing whether a landowner has incurred substantial costs toward completion of the job, although the other *Holmes* factors will bear on whether the costs incurred are substantial enough to establish a vested right under section 5(3)."

*Friends II*, 351 Or at 242-43.

With regard to the expenditure ratio, the Supreme Court specifically explained that, in *Holmes*, it had determined that expenditures may be included in the numerator even if they are not made exclusively for the proposed development.[5] *Friends II*, 351 Or at 237. Further, the Supreme Court noted that the adaptability factor is not subsumed within a calculation of the numerator—that is, expenditures that could be adaptable to another allowed use are not necessarily excluded from the numerator. *Id.* Instead, the Supreme Court in *Friends II* noted that, as explained in *Holmes*, "whether the expenditures have any relation to the completed project or could apply to various other uses of the land [is] one of five factors that should be taken into consideration *in addition* to the expenditure ratio." 351 Or at 237 (internal quotation marks omitted; emphasis in original).

In sum, the court emphasized that

"the ratio provides only the starting point for the analysis. It is not the sole factor to be considered, nor will it necessarily be the dispositive factor; that is, there is not some specific percentage which must always be present before the right to complete construction will vest. For example, *Holmes* states that the 'ultimate cost' also matters in the analysis. 265 Or at 199. As we understand *Holmes*, it lists

---

[5] In *Friends II*, the Supreme Court contrasted its decision in *Holmes* with a New York decision applying the ratio factor that it had examined in *Holmes*—*viz.*, *Town of Hempstead v. Lynne*, 32 Misc 2d 312, 222 NYS2d 526 (1961). Specifically, in *Friends II*, the Supreme Court noted that,

"in determining the expenses incurred, *Town of Hempstead* had considered only those expenditures made 'for the exclusive purpose' of the proposed development. *Holmes*, 265 Or at 198 (describing *Town of Hempstead*). *Holmes* instead identified the issue as whether 'the expenditures have any relation to the completed project or could apply to various other uses of the land.' *Id.* at 198-99."

351 Or at 237.

the 'ultimate cost' of the project separately from the expenditure ratio (which incorporates the cost of the project) because the weight to be given the expenditure may vary depending on the ultimate cost. More specifically, if the ultimate cost of developing a project is $1,000, a landowner who spends $200 toward its development will have incurred 20 percent of the projected cost. Few people, however, would think $200 a substantial expenditure, at least when determining whether a landowner's expenditure is substantial enough to complete and continue a prohibited use. Conversely, when the ultimate cost of a project runs into millions of dollars, an expenditure may be substantial even though it is only a small percentage of the projected cost."

*Friends II*, 351 Or at 247-48 (footnote omitted). In sum, the court reiterated that "focus[ing] solely on the expenditure ratio" is improper. *Id.* at 237.

Here, the legal underpinnings of the hearings officer's decision generally—and her essentially singular focus on the expenditure ratio specifically—were consistent with the analytical construct applied in *Friends I*. However, as noted, the Supreme Court illuminated and refined that construct in *Friends II* by explaining the nature of the various *Holmes* factors and admonishing that the expenditure ratio, while certainly significant, is not singular. Given the instruction of *Friends II*, the hearings officer misconstrued the applicable law in evaluating Johnson's application for a vested rights determination pursuant to Measure 49. Accordingly, the writ of review court did not err to the limited extent that it determined that the hearings officer had misapprehended the applicable legal standard of "common law vesting" and in remanding for reconsideration on *that* basis.

That would ordinarily conclude our appellate review—that is, having concluded that the writ of review court did not err in its disposition, we would simply affirm. However, the circumstances of this case are not ordinary.

Here, as we have previously explained, 249 Or App at 64-65, the writ of review court rendered its own extensive factual findings. That is something that a writ of review court cannot do. As the Supreme Court explained in *Alt v. City of Salem*, 306 Or 80, 85, 756 P2d 637 (1988), on writ of review, "[t]he reviewing court does not decide what the facts are, but

merely decides the legal question whether the evidence is sufficient to support the decision." Relatedly, when the writ of review court issued its judgment, it circumscribed the scope of the hearings officer's reconsideration on remand by requiring that "reconsideration [be] consistent with the Findings of Fact and Conclusions of Law entered by *the court*." (Emphasis added.) Accordingly, we must vacate the writ of review court's judgment and remand with instructions to enter a judgment vacating the county's decision and remanding for reconsideration in light of *Friends II*.[6]

Vacated and remanded with instructions to enter judgment vacating the county's decision and remanding for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011).

---

[6] Our analysis and disposition obviate the need to consider the county's other contentions on appeal concerning whether the hearings officer's findings were supported by substantial evidence.